IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>ROBERT E. PENNINGTON,<br>Defendant. | Case No. 00–CR–40013–JPG–2 |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Robert E. Pennington's Motion for Compassionate Release, (ECF No. 310), and his Supplement, (ECF No. 311). For the reasons below, the Court **DENIES** Pennington's Motion.

I.  PROCEDURAL & FACTUAL HISTORY

A. The Conviction

In 2000, a federal grand jury in this District indicted Pennington for conspiracy to manufacture methamphetamine. (Superseding Indictment 1, ECF No. 24). He pleaded guilty the next year, and the Court sentenced him to a 262-month term of imprisonment. (Judgment 1–2, ECF No. 183).

In November 2019, four months after being released, Pennington admitted to violating several conditions of supervised release, including (1) possession of methamphetamine, (2) possession of Suboxone, (3) possession of marijuana, (4) failure to participate in substance abuse treatment, and (5) failure to report to the U.S. Probation Office within 72 hours of being arrested or questioned by a law enforcement officer, among other things. (Judgment for Revocation 1–2, ECF No. 308). The Court sentenced him to 27 more months of imprisonment. (*Id.* at 3).

Pennington is currently incarcerated at Federal Transfer Center ("FTC") Oklahoma City. (Pennington's Mot. for Compassionate Release at 1). His projected release date is October 19, 2021. *See Find an Inmate*, Federal Bureau of Prisons [hereinafter "BOP"] (last visited Feb. 12, 2021).[1]

### B. The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about Pennington's background and the nature and circumstances of the offense. (PSR 1, ECF No. 181).

According to the PSR, Pennington and at least three others worked together to manufacture between 500 grams and 1.5 kilograms of a mixture and substance containing methamphetamine in only a year. (*Id.* at 4). "Pennington . . . provided precursors, including iodine and pseudoephedrine pills . . . . Iodine was purchased from feed stores, veterinary clinics, and animal supply stores in the Southern District of Illinois and pseudoephedrine pills were sometimes purchased at stores in Indiana." (*Id.* at 5). He then produced the drugs with his codefendant and business partner. (*Id.*). Pennington was also addicted himself, once "report[ing] that he traded a handgun to another individual for methamphetamine." (*Id.* at 6–7).

### C. Pennington's Motion for Compassionate Release

In 2020, Pennington moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Pennington's Mot. for Compassionate Release at 1). He contends that serious medical conditions—high blood pressure and cholesterol, "a long history of smoking," obesity, and polycystic kidney disease—make him especially vulnerable to the COVID-19 virus. (Pennington's Suppl. at 3–4). In brief, Pennington argues that his increased risk of

---

[1] *Available at* https://www.bop.gov/inmateloc/.

experiencing serious complications if he contracts COVID-19 is an *extraordinary and compelling* reason warranting his release. (*Id.* at 1).

The COVID-19 virus, of course, is now a global pandemic. At FTC Oklahoma City, 10 inmates currently have COVID-19, 442 have recovered, and two have died. *Coronavirus*, BOP (last visited Feb. 12, 2021).[2]

## II. LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing <u>not only</u> that he faces an increased risk from the virus, <u>but also</u> that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Pennington failed to meet that burden.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors are as follows:

  (1) the nature and circumstances of the offense and the history and characteristic of the defendant;

  (2) the need for the sentence imposed—

---

[2] *Available at* https://www.bop.gov/coronavirus.

|     |     |     |     |
| --- | --- | --- | --- |
|     |     | (A) | to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; |
|     |     | (B) | to afford adequate deterrence to criminal conduct; |
|     |     | (C) | to protect the public from further crimes of the defendant; and |
|     |     | (D) | to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; |
|     | (3) | the kinds of sentences available; | |
|     | (4) | the kinds of sentence and the sentencing range established for— | |
|     |     | (A) | the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or; |
|     |     | (B) | in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ; |
|     | (5) | any pertinent policy statement— | |
|     |     | (A) | issued by the Sentencing Commission . . . ; and |
|     |     | (B) | that . . . is in effect on the date the defendant is sentenced[;] |
|     | (6) | the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and | |
|     | (7) | the need to provide restitution to any victims of the offense. | |

18 U.S.C. § 3553(a).

Similarly, the Bureau of Prisons considers the following nonexclusive factors to determine whether extraordinary and compelling reasons warrant a sentence modification:

- Nature and circumstances of the inmate's offense.

- Criminal history.

- Comments from victims.

- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.
- Length of sentence and amount of time served. . . .
- Inmate's current age.
- Inmate's age at the time of offense and sentencing.
- Inmate's release plans (employment, medical, financial).
- Whether release would minimize the severity of the offense.

Federal Bureau of Prisons, Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence* (2019).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.'" *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Rather, it is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is—or is not—appropriate. *See Shannon*, 518 F.3d at 496; *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[A] district court's discretion in this area—as in all sentencing matters—is broad.").

### B. Exhaustion

Before moving for compassionate release in federal court, criminal defendants must exhaust their administrative remedies with the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). In other words, they must either (1) "fully exhaust[] all administrative rights to appeal a failure of the

Bureau of Prisons to bring a motion on the defendant's behalf," or (2) wait 30 days to lapse "from the receipt of such a request by the warden, whichever is earlier." *Id.* This exhaustion requirement is a *mandatory claim-processing* rule, meaning that, " '[i]f properly invoked, [it] must be enforced . . . .' " *United States v. Sanford*, — F.3d —, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021) (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 1843, 1849 (2019)). And although the Government was not ordered to respond, the Court must still "conduct a preliminary review to determine whether the motion is . . . premature." SDIL Fourth Am. Admin. Order 265 (2020).

Pennington alleges that he moved for compassionate release with the warden of FTC Oklahoma City. (Pennington's Suppl. at 1). He also contends that over 30 days passed without receiving a response. (*Id.*). Because Pennington's Motion fails on the merits, the Court will not require him to submit supplementation and will consider his administrative remedies exhausted.

### C. The § 3553(a) Factors

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Director of the Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released nearly 8,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Feb. 12, 2021).[3] So although not bound by any BOP

---

[3] *Available at* https://www.bop.gov/coronavirus/.

determination, the Court "will give the Director's analysis substantial weight . . . ." *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

With that in mind, the § 3553(a) factors weigh against a sentence modification here. The Court acknowledges that Pennington's serious medical conditions make him more vulnerable to COVID-19. But that alone cannot justify his release. Rather, Pennington's recent revocation mere months after being released demonstrates that he may still pose a public-safety risk. Despite extensive incarceration, Pennington immediately returned to a life of crime. While addiction is real and powerful, his actions reveal an indifference toward the general welfare. Thus, even given the COVID-19 pandemic, Pennington's continued incarceration is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to deter him and others from committing further crimes, and to protect the public.

### III.  CONCLUSION

The Court **DENIES** Defendant Robert E. Pennington's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Friday, February 12, 2021**

S/J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
